# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS OLIVA-HERNANDEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.  CV 16-06883-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.   INTRODUCTION

Plaintiff Jesus Oliva-Hernandez ("Plaintiff") challenges the Commissioner's[1] denial of his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income.  For the reasons stated below, the decision of the Commissioner is REVERSED.

## II.   PROCEEDINGS BELOW

On March 15, 2013, Plaintiff applied for DIB alleging disability beginning May 1, 2011.  (Administrative Record ("AR") 15.)  The same date, Plaintiff also

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

filed for supplemental security income. (AR 15.) His application was denied initially on July 11, 2013. (AR 86-90.) Plaintiff filed a written request for hearing, and a hearing was held on February 20, 2015. (AR 28-69, 91.) Represented by counsel, Plaintiff appeared and testified with the assistance of a Spanish-language interpreter. (AR 30-32.) An impartial vocational expert (VE) also testified. (AR 62-68.) On March 5, 2015, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[2] from May 1, 2011 through the date of decision. (AR 22.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-3.) Plaintiff filed this action on September 13, 2016. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2011, the alleged onset date ("AOD"). (AR 17.) At **step two**, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine. (*Id*.) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 18-19.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform medium work as defined in the Dictionary of Occupational Titles with the following non-exertional limitations: unable to climb ladders, ropes, and scaffolds; and otherwise able to perform

---

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

> occasional climbing, as well as occasional stooping, kneeling, crouching, and crawling.

(AR 19.)

At **step four**, based on the Plaintiff's RFC and the VE's testimony, the ALJ found that Plaintiff is capable of performing past relevant work as a unit assembler as generally performed. (AR 20.) The ALJ made alternative **step five** findings and concluded that Plaintiff is capable of adjusting to other work that exists in significant numbers and thus found that Plaintiff has not been under a disability from the AOD through the date of the decision. (AR 22.)

## III. <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v.*

*Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raises two claims in his challenge of the Commissioner's denial of benefits: (1) the ALJ's step four findings are not supported by substantial evidence; and (2) the ALJ erred in finding Plaintiff's mental impairments not severe. (Joint Submission ("JS") at 4.)

### A. The ALJ's Step Four Findings that Plaintiff Could Perform Past Relevant Work as Generally Performed

Plaintiff contends that the ALJ erred in determining at step four that he was capable of performing his past relevant work as a unit assembler as generally performed because the VE's testimony conflicts with the Dictionary of Occupational Titles ("DOT") regarding Plaintiff's English language limitations. (JS at 4-10.) Specifically, the DOT definition of "unit assembler" requires Level 2 language skills, but the ALJ found that Plaintiff is unable to communicate in English and is illiterate. Because the ALJ failed to inquire of the VE concerning the deviation between the VE's testimony that Plaintiff is able to perform the job of "unit assembler" and the DOT's language skills job description for "unit assembler," Plaintiff contends that the ALJ's step four finding lacks substantial evidence. (JS at 6-7.)

The Commissioner raises various arguments in opposition to Plaintiff's claim, including a harmless error argument. The Commissioner's harmless error argument rests on the ALJ's alternative step-five finding that Plaintiff can

///

perform jobs that exist in sufficient numbers in the national economy that have a DOT Level 1 language skills requirement.

### 1. Factual Background

At the administrative hearing, the VE categorized Plaintiff's past relevant work as a unit assembler, *see* Dictionary of Occupational Titles 809.681-010, *available at* 1991 WL 681553. (AR 63.) The ALJ posed a hypothetical question to the VE that included, *inter alia*, Plaintiff's inability to communicate effectively in English. (AR 63.) Based on the ALJ's hypothetical questions, the VE testified that a person with Plaintiff's vocational background and the assessed RFC can perform Plaintiff's past relevant work as generally performed, but not as actually performed. (AR 63.) The VE also identified other jobs that such an individual could perform at the medium level, including laundry laborer, hand packager, and dining room attendant. (AR 64.) During this testimony, the VE initially offered the job of food service worker as a job that a person with Plaintiff's vocational background and assessed RFC could perform, but then struck that job "because of the English speaking ability." (AR 64.) After posing additional hypothetical questions to the VE, Plaintiff's attorney cross-examined the VE. Plaintiff's attorney asked the VE one question, which concerned additional physical limitations (regarding occasional fine and gross manipulation, occasional reaching, alternate sitting and standing) plus the limitation of occasional public contact. (AR 67-68.) Before concluding the hearing, the ALJ asked the VE if her testimony was consistent with the DOT, and the VE answered that it was. (AR 68.)

In his decision, the ALJ accepted the VE's testimony and found at step four that Plaintiff is "able to perform his past relevant work" as generally performed in the national economy. (AR 21.) The ALJ then proceeded to make an alternative step-five finding, because "there have been other jobs existing in the national economy that [Plaintiff] has also been able to perform." (AR 21.) In his findings, the ALJ concluded:

5

Plaintiff . . . was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date . . . . [Plaintiff] is not able to communicate in English, and is considered in the same way as an individual who is illiterate in English . . . .

. . .

If [Plaintiff] had the residual functional capacity to perform the full range of medium work, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.26. However, [Plaintiff's] ability to perform all or substantially all of the requirements of this level of work has been impeded by [Plaintiff's] additional nonexertional limitations. To determine the extent to which these limitations erode the unskilled medium occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and residual functional capacity. The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative occupations including the following: laundry laborer []; hand packager []; and dining room attendant [].

Pursuant to SSR 00-4p, the undersigned has determined that the [VE's] testimony is consistent with the information contained in the [DOT].

Based on the testimony of the [VE], the undersigned concludes that, considering the [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate . . . .

(AR 21-22.)

2. <u>Legal Standard</u>

In determining whether appropriate jobs exist for a claimant, the ALJ generally turns to the DOT. *Light v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997). The ALJ may rely on testimony that contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation. Evidence sufficient to support a deviation from the DOT may be either specific findings of fact regarding a claimant's ability to perform particular jobs, or inferences drawn from the context of the expert's testimony. *Id.* at 1435 n.7; *see also Mkhitaryan v. Astrue*, No. CV 09-6971-SH2010 WL 1752162, at *2 (C.D. Cal. Apr. 27, 2010).

3. <u>Discussion</u>

The ALJ found that Plaintiff was not able to communicate in English and was effectively illiterate: the ALJ's hypothetical to the VE included Plaintiff's language limitation, and the ALJ's combined step-four and step-five findings expressly stated that Plaintiff was illiterate. However, the ALJ did not address in his written decision the impact of Plaintiff's illiteracy on his ability to perform past relevant work as generally performed. Nor did the ALJ ask the VE to explain the effect of Plaintiff's illiteracy on his ability to perform his past relevant work as generally performed, and thus the VE's testimony could not serve as substantial evidence in supporting the ALJ's step four determination. These failures make it difficult for the Court to review the ALJ's analysis and his related finding that Plaintiff could perform his past relevant work because Plaintiff's language abilities may deviate from that required by the DOT for the position. Additionally, the administrative record itself is inadequate for the Court to determine whether there was a reasonable basis for this deviation from the DOT.[3] While Plaintiff's past

---

[3] The Court determines that the VE's testimony initially offering the job of food service worker as a job that a person with Plaintiff's vocational background and

7

ability to work as a unit assembler despite his inability to communicate in English "may be a testament to his employability," the ALJ must nevertheless offer an explanation for the deviation. *See De Avila v. Colvin*, Case No. ED CV 1-00150-DFM, 2015 WL 5680315, at *3 (citing *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)); *see also Ordonez v. Colvin*, No. CV 13-8018-PLA, 2014 WL 4589931, at *5 (C.D. Cal. Sept. 15, 2014) (remanding where ALJ did not address claimant's English limitations in the decision and did not provide a definitive explanation for accepting the VE's deviation from the DOT in determining that claimant could perform past relevant work with Language Levels 1 and 2).

The Commissioner argues that any error at step four was harmless because the ALJ made alternative step five findings. But the ALJ's finding at step five suffers from the same errors as the jobs identified at step five require Level 1 language abilities, and the ALJ did not offer an explanation for the deviation. Other courts confronted with similar issues regarding illiteracy or inability to communicate in English have observed that "[a] decision holding that illiterate individuals could not perform Level 1 jobs would mean that illiteracy was a per se disability under the DOT. Illiterate people would not qualify to work any job listed in the DOT." *Meza v. Astrue*, No. C-09-1402-EDL, 2011 WL 11499 (N.D. Cal. Jan. 4, 2011) (citations omitted). The Court agrees that such a conclusion here could be seemingly inconsistent with Plaintiff's previous gainful employment. However, once the ALJ made the finding of illiteracy, he was required to explain how that language limitation related to Plaintiff's ability to perform jobs that appear to require language skills beyond those possessed by Plaintiff. *See Pinto*, 249 F.3d at 847 (remanding in part to determine how claimant's language skills factor into the disability determination). Because the ALJ did not do this, his findings at step

---

assessed RFC could perform, but then striking that job "because of the English speaking ability," is insufficient to uphold the ALJ's decision. As discussed herein, the ALJ was required to explain the deviation, but failed to do so.

four and five lack substantial evidence and remand is warranted.

In reaching this conclusion, the Court has considered and rejected the Commissioner's other arguments. In addition to asserting harmless error, the Commissioner argues that Plaintiff waived his claim by not raising it at the hearing. (JS at 14-17 (citing *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999)).) The Ninth Circuit recently reconciled its decision in *Meanel,* holding that represented claimants must raise all issues and evidence at their administrative hearings to preserve them on appeal, with the Supreme Court's subsequent decision in *Sims v. Apfel*, 530 U.S. 103, 112, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000), holding that claimants need not exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues. *Shaibi v. Berryhill*, 870 F.3d 874, 882 (9th Cir. 2017). In *Shaibi*, the Ninth Circuit found that the *Meanel* waiver applied to issues not raised during proceedings before an ALJ or the Appeals Council, where the claimant did not show good cause for his failure to challenge the VE's job numbers during the hearing, and where there was no indication that the ALJ was required to inquire *sua sponte* into the foundation for a VE's opinion on job numbers. *Id.* The situation here is distinguishable. Here, although Plaintiff did not raise his claim with either the ALJ or the Appeals Council, he is not attempting to introduce new evidence, and the ALJ is required to explain deviations between VE testimony and the DOT.

The Commissioner also argues that the DOT does not specify that its language requirements are specifically for the English language. (JS at 12.) This argument lacks merit. In *Chavez v. Dept. of Health and Human Services*, the Ninth Circuit held that "only literacy in English is considered, since literacy in other languages has little effect on the number of jobs in the national economy available to the claimant. . . . 'Illiterate' therefore means illiterate in English. 103 F.3d 849, 852 (9th Cir. 1996).

Accordingly, remand is warranted at step four.

**B. ALJ's Finding that Plaintiff's Mental Impairments Were Not Severe**

Plaintiff next contends that the ALJ erred in finding that his mental impairments were not severe. JS at 20-23.

1. Factual Background

The ALJ's decision discussed the medical record documenting Plaintiff's diagnosis of anxiety disorder, not otherwise specified, and a depressive disorder, not otherwise specified. (AR 18.) However, the ALJ concluded that "a pattern of significant mental symptoms is not established for any period of 12 consecutive months throughout the period at issue" and thus Plaintiff's mental impairment is not severe, as defined by the Social Security Administration. (AR 18.)

The ALJ proceeded to evaluate Plaintiff's mental impairment using the familiar "paragraph B" criteria and concluded that Plaintiff had mild limitations in the first three functional areas and had not experienced any episodes of decompensation of extended duration with respect to the fourth functional area. (AR 18.) Based on these findings, the ALJ found Plaintiff's mental impairment not severe. (AR 18.) While the ALJ found Plaintiff's mental impairment not severe for purposes of steps two and three of the sequential evaluation process, the ALJ noted that, for purposes of steps four and five, the assessed RFC "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (AR 18.)

2. Legal Standard

The step two inquiry is meant to be a *de minimis* screening device. *Smolen v. Chater,* 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert,* 482 U.S. 137, 153–54, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)). At step two, the ALJ identifies a claimant's severe impairments, *i.e.*, impairments that significantly limit his or her ability to do basic work activities.[4] 20 C.F.R. § 404.1520(a)(4)(ii); *Smolen,* 80 F.3d

---

[4] Basic work activities are "the abilities and aptitudes necessary to do most jobs[.]" 20 C.F.R. § 404.1521(b).

at 1290. A determination that an impairment is not severe requires evaluation of medical findings describing the impairment, and an informed judgment as to its limiting effects on a claimant's ability to do basic work activities. Social Security Ruling ("SSR") 85–28, 1985 WL 56856, at *4 (Jan. 1, 1985).[5]

The ALJ must take into account subjective symptoms in assessing severity, *Smolen,* 80 F.3d at 1290, but "medical evidence alone is evaluated … to assess the effects of the impairment(s) on ability to do basic work activities." SSR 85-28 at *4. An impairment or combination thereof may properly be found not severe if the clearly established objective medical evidence shows only slight abnormalities that minimally affect a claimant's ability to do basic work activities. *Webb v. Barnhart,* 433 F.3d 683, 687 (9th Cir. 2005); *Smolen,* 80 F.3d at 1290.

3. Discussion

Plaintiff contends that the ALJ erred in finding that Plaintiff did not satisfy the 12-month period noting that an impairment is considered severe if it has lasted or is expected to last at least 12 months. (JS at 21.) Plaintiff asserts that the record shows he had demonstrated mental health issues beginning in November 2013 through at least September 2014. (*Id.* at 23.) Additionally, Plaintiff contends that the ALJ erred in not developing the record further by ordering a consultative psychiatric examination. (*Id.*)

The Court concludes that substantial evidence supports the ALJ's determination that Plaintiff's mental health impairment was not significantly limiting for at least 12 consecutive months. An examination of the medical records shows the first documented treatment note of depression in Plaintiff occurred in November 2013. AR 300. Plaintiff was referred "to mental health for anxiety" in April 2014. AR 338. In a July 2014 medical assessment, Plaintiff was diagnosed as having anxiety disorder NOS, depressive disorder NOS, and anxiety disorder due

---

[5] SSRs do not have the force of law, but a reviewing court generally accords them some deference. *Holohan v. Massanari,* 246 F.3d 1195, 1202 n.1 (9th Cir. 2001).

to "gen med." AR 321. The July 2014 assessment also noted a GAF score of 50. *Id*. A medical progress note dated September 2014 shows Plaintiff discussing his anxiety and that a treatment plan including relaxation, cognitive diversion activities, and meditation classes was discussed. AR 313. This record of Plaintiff's diagnosed mental impairment falls short of the required 12-month consecutive period. *See Neal-Allen v. Astrue*, 265 F. App'x 670, 671 (9th Cir. 2008) (claimant's diagnosed symptoms of depression for a period of, at most, 11 months does not satisfy 12 continuous month requirement for disability).

The Court concludes that the ALJ's rejection of the GAF score assessed by a social worker was not erroneous. The ALJ found that the GAF score was inconsistent with the record which showed an "absence of a longitudinal history of persistent and significantly limiting mental symptoms." AR 20. This was a valid and germane reason for rejecting a lay witness's opinion. *See Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (ALJ may discount testimony of source other than a medically acceptable treating source "if the ALJ gives reasons germane to each witness for doing so") (internal quotations omitted) (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)).

Finally, Plaintiff's contention that the ALJ was required to develop the record further by ordering a consultative psychiatric examination is unpersuasive. An ALJ's "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The record here was neither ambiguous nor inadequate.

Even assuming that the ALJ incorrectly found that Plaintiff's mental impairments were not severe, any error was harmless. First, step two was resolved in Plaintiff's favor, i.e., the ALJ found Plaintiff's degenerative disc disease of the cervical and lumbar spine to be severe and properly continued with the sequential

12

evaluation process. *Hickman v. Comm'r Soc. Sec. Admin.*, 399 F. App'x 300, 301 (9th Cir. 2010) (any error in the ALJ's failure to find an impairment severe was harmless, in part, because the ALJ found that claimant "suffered from other severe impairments and, thus, step two was … resolved in [her] favor"); *Burch*, 400 F.3d at 682 ("Assuming without deciding that [omitting obesity at step two] constituted legal error, it could only have prejudiced [claimant] in step three (listing impairment determination) or step five (RFC) because the other steps … were resolved in her favor.").

Second, as noted above, the ALJ considered all of Plaintiff's impairments during his analysis at step four. *See, e.g.*, AR 18 ("Therefore, the following [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis"), 20 ("the record documents mental health treatment only as of July 2014 . . . [Plaintiff] testified that he has had such treatment three or four times, but the record appears to document only two such visits."); *see also Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (even if the ALJ erred by not including an impairment at step two, any error was harmless because the ALJ considered the limitations posed thereby at step four).

Thus, the ALJ's supposed step two error does not warrant reversal.

### C. **Remand For Further Administrative Proceedings**

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were

credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate to allow the ALJ to explain how Plaintiff's language limitations related to his findings at step four and, if necessary, at step five of the sequential process.

## V. **CONCLUSION**

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the case to the Agency for further proceedings.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 14, 2017

_____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**